UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THYSSENKRUPP ELEVATOR CORPORATION,

               Plaintiff,

vs.                     Case No.  2:13-cv-202-FtM-29UAM

LARRY HUBBARD, JR.,

               Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff ThyssenKrupp Elevator's Amended Motion for Preliminary and Permanent Injunctive Relief (Doc. #17) filed on April 16, 2013.  Defendant filed a Memorandum in Opposition (Doc. #33) on July 2, 2013.  The parties also filed an Affidavit of Larry Hubbard (Doc. #33, Exh. A), an Affidavit of John Atherton (Doc. #33, Exh. B), an Affidavit of Grant Gorski (Doc. #33, Exh. C), an Affidavit of Charles Rod Middleton (Doc. #35), a Declaration of Richard Francis (Doc. #37), portions of Larry Hubbard's deposition (Doc. #38), and portions of John Atherton's deposition (Doc. #39).  The Court heard oral argument on July 26, 2013, and allowed each party to submit a supplemental memorandum addressing plaintiff's standing to enforce the non-compete agreement.  (Docs. ## 45, 47.)

**I.**

Plaintiff ThyssenKrupp Elevator Corporation (ThyssenKrupp or plaintiff) provides components, systems, and customized service

programs for elevators, escalators, and moving walks to customers throughout the country. Defendant Larry Hubbard, Jr. (Hubbard or defendant) began his employment with ThyssenKrupp's predecessor, General Elevator Sales and Service, Inc. (GESS), in August 2007. As a condition of his employment, Hubbard signed a General Elevator Sales & Service, Inc. Agreement on Confidential Information, Intellectual Property Non-Solicitation and Non-Competition (Employment Agreement) on August 21, 2007. The Employment Agreement contains the following restrictive covenants:

> 2. I will not during the term of my employment with Employer and for two (2) years hereafter, act as a competitor to Employer regarding customers and/or prospective customers within the following geographical area: Lee County, Collier & Hendry Counties, and Charlotte [County].
>
> 3. I will not during the term of my employment with Employer and for two (2) years thereafter, individually or in combination with any Competitor, market, produce, solicit orders, sell, deliver, or provide any product, process, or service which resembles or competes with a product, process or service with which I was involved in any capacity while employed by Employer to any Active Customer or Prospect.
>
> 4. I will not, directly or indirectly, during the term of my employment and for a period of two (2) years thereafter hire, recruit, solicit or encourage any employee or independent contractors of Employer to leave the employ of Employer or to accept employment elsewhere.[1]

(Doc. #17, Exh. #3.)

---

[1] ThyssenKrupp cites to this provision of the Employment Agreement in its motion, but fails to address it further.

Hubbard continued his employment with GESS and ThyssenKrupp until he resigned on December 7, 2012.  At the time of his resignation, Hubbard held the position of service manager for an area encompassing Lee County, Collier County, Hendy County, and Charlotte County.  As a service manager, Hubbard assisted with and evaluated the work performed by the technicians under his supervision and occasionally assisted customers with decisions regarding repairs and modernization.

After leaving ThyssenKrupp, Hubbard intended to start a consulting company called JR Consulting Services.  As a consultant, Hubbard planned on assisting clients with modernizations by identifying the required equipment, advertising and collecting bids, and overseeing the project once a bid was awarded.  Hubbard needed help starting his company so he contacted John Atherton, a former employee of GESS.  Atherton agreed to help and allowed Hubbard to "hang" his Elevator Inspection license with his company, General Elevator Solutions LLC (GES).[2]  Shortly thereafter, Atherton hired Hubbard has a mechanic to help him get on his feet.

On December 18, 2012, Hubbard, in an attempt to generate business for JR Consulting Services, performed a free service audit for Palmas Del Sol, a condominium serviced by ThyssenKrupp.  The

---

[2]After starting GES in April 2012, Atherton used the relationships he developed while employed by GESS to acquire customers, some of whom were previously associated with ThyssenKrupp.

lead for the service audit came from Palmas Del Sol's association manager, Charles Rod Middleton.  Palmas Del Sol ultimately decided not to renew its contract with ThyssenKrupp and now receives its service from GES.  Since that time, Middleton's management firm has been recommending GES to all of its clients that have the ability to switch vendors.  Furthermore, Middleton stated that the decisions to leave ThyssenKrupp were based on failing relationships and had nothing to do with Hubbard.

Hubbard performed another free service audit on January 14, 2013, at Steamboat Bend East.  Atherton provided Hubbard with the lead for this audit after he was contacted by its association manager, Grant Gorski.  Steamboat Bend East worked with ThyssenKrupp to resolve a majority of the problems identified in the service report provided by Hubbard and continues to use ThyssenKrupp for its elevator service.

The free service audits did not generate any business for JR Consulting Services and it has yet to make any money.  Hubbard never incorporated JR Consulting Services and is currently working as a mechanic at GES.

ThyssenKrupp believes that Hubbard is violating the Employment Agreement by competing with ThyssenKrupp in the prohibited counties, directly or indirectly soliciting ThyssenKrupp's clients and prospects to do business with GES, and aiding, abetting, and assisting others to solicit ThyssenKrupp's clients and prospects to

cease and refrain from doing business with ThyssenKrupp.

**II.**

ThyssenKrupp seeks a preliminary injunction and a permanent injunction against Hubbard.  Plaintiff's Verified Amended Complaint assets claims for injunctive relief (Count I), breach of the Employment Agreement (Count II), tortious interference with business relations (Count III), unfair competition (Count IV), and violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count V).

Plaintiff is not entitled to a permanent injunction unless it prevails on the case; therefore, that relief is premature and is denied.  The standard for issuance of a preliminary injunction is well established:

> Under the familiar four-part test, a preliminary injunction is warranted if the movant demonstrates "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is issued, and (4) an injunction would not disserve the public interest.

Odebrecht Const., Inc. v. Secretary, Florida Dept. of Transp., 715 F.3d 1268, 1273 (11th Cir. 2013) (citing Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011)).  "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes 'the burden of persuasion' as to each of the four prerequisites."  Siegel v. LePore, 234 F.3d 1163, 1176

(11th Cir. 2000) (quoting <u>All Care Nursing Serv., Inc. v. Bethesda</u> <u>Mem'l Hosp., Inc.</u>, 887 F.2d 1535, 1537 (11th Cir. 1989)).  A plaintiff may support its motion for a preliminary injunction by setting forth allegations of specific facts in a verified complaint or accompanying affidavits.  Local Rule 4.05(b)(2).  In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for the entry of a permanent injunction. <u>Levi Strauss & Co. v. Sunrise Int'l Trading Inc.</u>, 51 F.3d 982, 985 (11th Cir. 1995).

**A.  Substantial Likelihood of Success on the Merits**

The first factor in determining whether a preliminary injunction should issue is whether the plaintiff is likely to prevail on the merits of its claims.  ThyssenKrupp asserts that it is likely to prevail on the following claims: breach of the Employment Agreement, tortious interference with business relations, and violation of the FDUTPA.

**1.  Breach of the Employment Agreement**

**i.  Standing to Enforce the Employment Agreement**

The threshold issue in this claim is the standing of plaintiff to enforce the Employment Agreement signed by defendant with defendant's former employer.  The chronology is as follows:

On August 21, 2007, Hubbard signed the Employment Agreement with his former employer GESS. This is the non-compete agreement plaintiff is attempting to enforce.

In September 2011, Elevator Service Holding Company, LLC, the holding company which owned the GESS stock, sold its stock to ThyssenKrupp Elevator Americas Corporation pursuant to a Stock Purchase Agreement (submitted under seal). Plaintiff initially asserted a right to enforce the Employment Agreement pursuant to this Stock Purchase Agreement. (Doc. #17, p. 2.) The September 7, 2011, Stock Purchase Agreement lists Elevator Service Holding Company, LLC's existing material contracts, but Hubbard's Employment Agreement with GESS was not included.

After oral argument on the motion for a preliminary injunction, plaintiff withdrew its reliance on the Stock Purchase Agreement as the basis for its standing. (Doc. #45, p. 4 n.1.) Plaintiff recognized that the holding company's stock was purchased by its parent company, ThyssenKrupp Elevator Americas Corporation, not plaintiff ThyssenKrupp Elevator Corporation. Plaintiff now relies upon a subsequent merger between GESS and itself as the source of its standing.

On December 12, 2011, an Agreement of Merger (Doc. #45, Exh. #1) merged several companies, including GESS, with ThyssenKrupp Elevator Corporation, which was the surviving company. The Agreement of Merger provided in part that "[t]he Surviving Company

shall succeed to all of the Merging Companies' properties and assets and . . . ."  (Doc. #45, Exh. #1, Article 2.2.)

Hubbard asserts that his Employment Agreement was not transferred along with the stock to ThyssenKrupp Elevator Americas Corporation, resulting in its exclusion from the merger between GESS and plaintiff.  Thus, defendant argues that plaintiff has no standing to enforce the Employment Agreement.  The Court disagrees.

The Stock Purchase Agreement, which omitted reference to the Employment Agreement, sold stock in GESS's holding company, not the assets of either the holding company or GESS.  Whatever the ramifications of the omission of Hubbard's Employment Agreement between those parties, the omission does not impact the enforceability of the Employment Agreement.  The merger included all assets of GESS, whether disclosed in a prior transaction or not.  Therefore, the Court finds plaintiff has standing to seek enforcement of Hubbard's Employment Agreement.

**ii.  Enforceability of the Employment Agreement**

Under Florida law, a party seeking to enforce a restrictive covenant must prove the existence of one or more legitimate business interests justifying the restrictive covenant and that the contractually specified restraint is reasonably necessary to protect those legitimate business interests.  Fla. Stat. § 542.335(1)(b)-(c).  The opposing party then has the burden to prove that the restraint is "overbroad, overlong, or otherwise not

reasonably necessary to protect the established legitimate business interest or interests." Fla. Stat. § 542.335(1)(c). The term "legitimate business interests" includes, but is not limited to: trade secrets; valuable confidential business or professional information that does not qualify as a trade secret; substantial relationships with specific prospective or existing customers; client goodwill; and extraordinary or specialized training. Fla. Stat. § 542.335(1)(b).

ThyssenKrupp asserts that the restrictive covenants contained in the Employment Agreement were designed to protect its legitimate business interests. ThyssenKrupp identified three such interests: "the goodwill generated by ThyssenKrupp with its clients, the substantial relationships developed with those clients, and the confidential information compiled by ThyssenKrupp and shared with Hubbard during the course of his employment." (Doc. #17, p. 9.)

Client goodwill associated with a specific geographic location or a specific trade area is recognized as a legitimate business interest. Fla. Stat. § 542.335(1)(b)(4). Plaintiff has failed to identify any facts or evidence in support of its assertion. Therefore, it does not appear substantially likely at this time that ThyssenKrupp will be able to establish a legitimate business interest in client goodwill.

ThyssenKrupp alleges that Hubbard was privy to confidential business information including customer lists, the names of key

individuals within the organization of customers, customer contracts, contract anniversary dates, profit and loss information, and the profitability of accounts. Hubbard, however, denies this allegation. An employer may have a legitimate business interest in the confidential information shared with a former employee. "Information that is commonly known in the industry and not unique to the allegedly injured party is not confidential and is not entitled to protection." Autonation, Inc. v. O'Brien, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004). However, "when an employee has access to confidential business information crucial to the success of an employer's business, that employer has a strong interest in enforcing a covenant not to compete." Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1234 (11th Cir. 2009).

While the Court is unable to determine exactly what information Hubbard was privy to while employed by ThyssenKrupp, it appears that most of the "confidential information" identified in the Verified Complaint can be obtained from other sources. For example, customer names and contact information can be obtained from association managers or individuals like John Atherton. Furthermore, Grant Gorski and Charles Rod Middleton stated that they showed John Atherton their clients' contracts with ThyssenKrupp. (Doc. #33, Exh. #2, p. 2; Doc. #35, Exh. #1, p. 2.) Because ThyssenKrupp has failed to present any evidence showing that Hubbard was privy to information unique to its business or

crucial to its success, the Court cannot conclude that ThyssenKrupp has met its burden of showing confidential information as a legitimate business interest. See Anich Indus., Inc. v. Raney, 751 So. 2d 767, 771 (Fla. 5th DCA 2000).

Finally, ThyssenKrupp claims that the relationships developed with its clients are legitimate business interests. To support this claim, plaintiff must show that it has *substantial* relationships with *specific* clients. Fla. Stat. § 542.335(1)(b); see also Anich, 751 So. 2d at 771. The Court concludes that it is substantially likely that ThyssenKrupp will be able to establish a legitimate business interest in its client relationships. The evidence shows that Hubbard performed service audits for two of ThyssenKrupp's customers, one of whom left ThyssenKrupp for GES, and the affidavit of Grant Gorski states that he currently manages six associations with elevators and all of them have contracted with ThyssenKrupp for their service needs. Such evidence is sufficient to establish a legitimate business interest in client relationships. See Environmental Srvs., Inc. v. Carter, 9 So. 3d 1258, 1266 (Fla. 5th DCA 2009) (holding that active relationships with customers constitute a legitimate business interest). Accordingly, plaintiff has met its burden of establishing at least one legitimate business interest supporting the enforceability of the Employment Agreement.

### iii.   Breach of the Employment Agreement

In order to prevail on this element, there must be a substantial likelihood that ThyssenKrupp will prove that Hubbard breached the Employment Agreement.  Hubbard contends that Employment Agreement has not been breached because he is not providing any product, process, or service that he was providing while employed by ThyssenKrupp.  Alternatively, Hubbard argues that if the Court determines he did breach the Employment Agreement, he should not be precluded from working for GES because it is not harmful to ThyssenKrupp's legitimate business interests.

Restrictive covenants are to be construed in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement and must not be construed narrowly, against the restraint, or against the drafter of the contract.  Fla. Stat. § 542.335(1)(h).  Here, the restrictive covenants contained in the Employment Agreement prohibit Hubbard from marketing, producing, soliciting, selling, delivering, or providing any product, process, or service which resembles or competes with any product, process, or service with which he was involved *in any capacity* while employed by ThyssenKrupp.  (Doc. #17, Exh. #1.)  The covenant does not rely on the position or job title held by the employee as Hubbard suggests; rather, it focuses on the employee's involvement in the product, process, or service at issue.

The excerpts from Hubbard's deposition show that he supervised, assisted, and evaluated elevator maintenance, and occasionally worked with customers on decisions about repairs and modernization while employed by ThyssenKrupp. (Doc. #38, pp. 12-13, 28-29, 32.) Following his departure from ThyssenKrupp, Hubbard provided service evaluations for two of ThyssenKrupp's customers, attempted to solicit work as a consultant regarding modernization, and currently works as a mechanic for GES in the prohibited counties. (Doc. #38, pp. 37, 45, 72.) Based on this evidence, the Court finds a substantial likelihood Hubbard is in breach of the Employment Agreement.

Hubbard contends that an injunction prohibiting him from acting as a mechanic is not reasonably necessary to protect any of ThyssenKrupp's alleged business interests. A restrictive covenant cannot be used as a tool simply to eliminate competition and may be unreasonable if it inflicts an unduly harsh or unnecessary result upon the employee. Edwards v. Harris, 964 So. 2d 196, 197 (Fla. 1st DCA 2007) (citations omitted). Accordingly, the employee can only be restricted from engaging in activities "harmful to the legitimate business interest" of the former employer. Id. The Court agrees with Hubbard.

Nothing in the evidence before the Court suggests that ThyssenKrupp's legitimate business interest in client relationships will be harmed if Hubbard is allowed to work as a mechanic. In

fact, Charles Rod Middleton stated that a number of his customers left ThyssenKrupp for GES because of failing relationships and their decisions had nothing to do with Hubbard.  (Doc. #35, Exh. #1, p. 3.)   Accordingly,  the  Court  finds  that  it  would  be unreasonable to enjoin Hubbard from acting as a mechanic.  <u>See</u> <u>Edwards</u>, 964 So. 2d at 198 (holding that a covenant preventing the defendant from working with a competitor in any capacity was unreasonable).  In conclusion, the Court finds that ThyssenKrupp has shown a substantial likelihood of success on its claim for breach of the Employment Agreement, except for work as a mechanic.

## 2.  **Tortious Interference with Business Relations**

A claim for tortious interference requires "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." <u>Gossard v. Adia Servs., Inc.</u>, 723 So. 2d 182, 184 (Fla. 1998). Hubbard contends that ThyssenKrupp failed to meet its burden on the first and third elements.

A "business relationship," for purposes of the first prong, does not require a contractual agreement, but does require a relationship with a particular party.  <u>Dunn v. Air Line Pilots</u> <u>Ass'n</u>, 193 F.3d 1185, 1191 (11th Cir. 1999).  As previously discussed, it is clear that ThyssenKrupp has contractual agreements

with particular parties; therefore, ThyssenKrupp has met its burden on this element.

To prove interference, ThyssenKrupp must show that Hubbard intentionally induced or caused a breach or termination of a business relationship or expectancy. <u>Anthony Distribs., Inc. v. Miller Brewing Co.</u>, 941 F. Supp. 1567, 1572 (M.D. Fla. 1996).  The evidence shows that Palmas Del Sol terminated its relations with ThyssenKrupp following Hubbard's audit, but Hubbard presented evidence showing that the contract was not renewed because of a failing relationship.  Because there is no additional evidence supporting the third element, ThyssenKrupp has failed to show a substantial likelihood of success on this claim.

## 3.  Violation of the FDUTPA

The FDUTPA broadly declares unlawful any unfair methods of competition or deceptive acts or practices committed in the conduct of any trade or commerce.  Fla. Stat. § 501.204(1).  A claim for damages under the FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." <u>City First Mortg. Corp. v. Barton</u>, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (citing <u>Rollins, Inc. v. Butland</u>, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).  "A practice is unfair under FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." <u>Furmanite America, Inc. v. T.D. Williamson, Inc.</u>, 506 F. Supp. 2d 1134, 1145

-15-

(M.D. Fla. 2007) (citing <u>Surris v. Gilmore Liquidating, Inc.</u>, 651 So. 2d 1282, 1283 (Fla. 3d DCA 1995)).

Here, ThyssenKrupp alleges, upon information and belief, that Hubbard is deceiving ThyssenKrupp's customers by posing as an independent inspector with the intent of luring them to his employer, GES.  The record, however, is completely void of any evidence supporting such beliefs. Accordingly, the Court concludes that ThyssenKrupp did not meet the persuasion as to this claim.

## B.  Irreparable Harm

In Florida, "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j).  <u>See also</u> <u>Proudfoot</u>, 576 F.3d at 1231.  This presumption, however, is rebuttable.  <u>JonJuan Salon, Inc. v. Acosta</u>, 922 So. 2d 1081, 1084 (Fla. 4th DCA 2006).  As discussed above, plaintiff has shown a substantial likelihood that Hubbard breached the Employment Agreement by performing service audits and attempting to solicit work as a consultant regarding modernization. Hubbard has made no attempt to rebut the presumption of irreparable harm; therefore, the Court concludes that the presumption applies.

## C.  Balance of the Harm to the Parties

The Court also finds that the potential injury to ThyssenKrupp outweighs whatever damage an injunction may cause Hubbard.  JR

Consulting Services has not generated any income or business and has all but been abandoned by Hubbard.

**D.  Public Interest**

Here, there is no evidence that a preliminary injunction would be adverse to the public interest.  It would be in the public interest to enter a preliminary injunction in this action as the Court has found a substantial likelihood of success on the merits and it is in the public's interest to uphold the law.

Accordingly, it is now

**ORDERED:**

I.  ThyssenKrupp Elevator's Amended Motion for Preliminary and Permanent Injunctive Relief (Doc. #17) is **GRANTED** in part and **DENIED** in part.

A.  ThyssenKrupp's request for permanent injunctive relied is **DENIED.**

B.  ThyssenKrupp's request for preliminary injunctive relief is **GRANTED** as follows:

(1)  Defendant Larry Hubbard is hereby preliminarily enjoined and restrained from acting as a competitor to TyssenKrupp regarding customers and/or prospective customers within the following geographical area: Lee County, Collier County, Hendry County, and Charlotte County.

(2)  Defendant Larry Hubbard is hereby preliminarily enjoined and restrained from marketing, producing, soliciting, selling, delivering, or providing any product, process, or service which resembles or competes with any product, process, or service with which he was

-17-

involved in any capacity while employed by ThyssenKrupp, but is not enjoined from working as a mechanic.

(3) This preliminary injunction shall remain in effect until December 7, 2014.

**DONE AND ORDERED** at Fort Myers, Florida, this ___4th___ day of

November, 2013.


_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE


Copies:

Counsel of record